The STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* HENRY LAVOIE, AND JANE DOE LAVOIE, PETER LONGPRE, DECEASED, AND ALL HEIRS OR DEVISEES OF SAID PETER LONGPRE, DEFENDANTS AND RESPONDENTS.

No. 11678.
Decided March 9, 1970.
Rehearing Denied April 8, 1970.
466 P.2d 594.

40

McKeon & Brolin, Anaconda, John L. McKeon argued, Anaconda, Nicholas Rotering, Donald MacPherson and Harry C. Alley, Helena, for State Highway Comm'n.

Garlington, Lohn & Robinson, Missoula, J. C. Garlington, argued, Missoula, for respondents.

MR. JUSTICE HASWELL delivered the opinion of the Court.

This is an eminent domain proceeding involving acquisition of land for construction of an interstate highway through the Frenchtown valley, west of Missoula. Following a "necessity" hearing, the district court of Missoula County, Hon. E. Gardner Brownlee, district judge, entered a single three-part order: (1) putting the state in possession of the land sought to be condemned, (2) issuing its preliminary order of condemnation, and (3) requiring the state to incorporate in its construction plans such structures as would allow two lane access across the proposed interstate highway along a certain county road and requiring the submission of such plans to the court for approval. From this order, the state appeals.

Plaintiff condemnor is the State of Montana, acting through the State Highway Commission. Plaintiff seeks to acquire by condemnation an 8 acre strip of agricultural land running gener-

ally in an east-west direction across defendant landowners' property. The principal defendant and landowner herein is Henry Lavoie, hereinafter referred to as defendant, a farmer who owns about 700 acres primarily devoted to hay and grain production but also used for running cattle. The state's proposed "take" divides defendant's farm into two parcels, one to the north of the interstate highway and a smaller parcel to the south containing most of the farm buildings.

Prior to the proposed interstate highway construction, defendant's farm was divided by U. S. Highway #10 and the Northern Pacific Railroad track which runs generally parallel to U. S. #10 on its southerly side. However, this proved to be no problem in the operation of defendant's farm as U. S. #10 is not a "controlled access" highway. Thus, there is an "at grade" crossing over the existing highway, as well as across the railroad track. These grade crossings joined the north and south parcels of defendant's farm and permitted their operation as one unit.

The land which is the subject of the instant condemnation action lies along the north side of the presently existing U. S. #10 and immediately adjacent to it. The state seeks to use the existing right-of-way of U. S. #10 in conjunction with the land here sought to be condemned for construction of the proposed interstate highway. This proposed interstate highway is a "controlled access" highway which will be elevated on an average of 12 feet above the level of the existing highway. Following construction of the proposed interstate highway, defendant will have access to the two parcels of his property only by means of frontage roads and interchanges at Huson, 1½ miles to the west, and at Frenchtown, 4 miles to the east.

This case came on for a "necessity" hearing on November 18, 1968. Plaintiff condemnor introduced the condemnation resolution of the State Highway Commission and rested. The property owner introduced testimony from four witnesses: the property owner; a state highway department engineer; an independent real estate appraiser; and, a state highway department ap-

praiser. This testimony generally related to whether construction of the interstate highway in the manner proposed by the State Highway Commission would accomplish the greatest public benefit and the least private injury without providing direct access across the interstate between the two parcels of defendant's property. The cost of an underpass to provide this access, and the depreciation in values without it, was the subject of much testimony.

Stephen C. Kologi, a state highway department engineer called as a witness by the property owner, testified that the cost of installing either a 12 x 18 foot concrete underpass or a 15 foot pipe underpass "would be approaching $150,000."

The question of costs in relation to lack of direct access across the proposed interstate was also presented as several items. The first pertained to irrigation, being the cost of circuitous travel between the south parcel and the north parcel, to-wit: $1,248. Then, considering all circuitous travel, the defendant testified that he would be caused to expend $6,396. The depreciation to the premises was next allowed in the form of testimony from the defendant's appraiser, this being a "before value" of $257,000 and an "after value" of the sum of $40,000 and $86,000, the net depreciation, according to this witness, being $131,000. Plaintiff produced testimony as to the net difference between the "before" and "after" values of defendant's farm, these differences being a low of $22,200 and a high of $27,300.

At this point the court recessed the hearing on this note:

"I have made the order now for the Minutes, the Order of Necessity is made and the Order Putting Plaintiff in Possession is made. The Court reserves the right to determine whether or not and where the underpass should be put in. Now, this is—

"MR. GARLINGTON: That's all right. [Landowner's attorney.]

"MR. BROLIN: That's fine. [Highway Commission attorney.]

"THE COURT: Now, I am not going to do that as blind as I

am right now. The landowner is going to have to give me some specifications, and the Highway then is going to have to take those specifications, where he wants it, how big he wants it, what he wants, and give me some fairly accurate information as to an estimated cost to the taxpayer of this facility. What I have got here is, as far as I am concerned, hopelessly unsatisfactory.''

A few days thereafter, the court, by letter to counsel for the State Highway Commission, suggested that an underpass be constructed ''on the county road at the edge of the landowner's property.'' This county road is also referred to as the Houle Creek Road.

Shortly thereafter, the Highway Commission rejected the court's suggested solution primarily on the basis that the cost of a crossing structure could never be justified. Cost estimates of the Highway Commission for various types of crossing structures varied from $145,000 to an unspecified sum in excess of $205,000, according to a highway department memorandum.

Accordingly, the ''necessity'' hearing reconvened on January 27, 1969, to carry out the court's request for additional evidence on the comparative costs of the desired underpass vs. reduced severance damage.

Plaintiff condemnor offered no direct testimony at this hearing, but relied on the cost estimates of the highway department contained in its memorandum heretofore referred to.

Defendant property owner called five witnesses at this second hearing: 2 nearby ranchers, a county commissioner and neighboring rancher, a state highway design engineer, and the property owner. He also produced drawings of an underpass of the kind he thought suitable, which was being built on another section of the interstate, and established through the state highway engineer that the cost of the proposed underpass on the county road at the edge of the landowner's property would be somewhere in the neighborhood of $75,000.

The property owner's evidence tended to establish the convenience and usefulness of an underpass at that location. His

evidence revealed that: the Houle Creek Road has been used as a county road over 63 years; it serves a number of farms and ranches in the area; it would be the only way *under* the highway through the entire extent of the Frenchtown valley; the underpass would reduce by half the extra mileage needed to service the Frenchtown irrigation canal; it would expedite the trailing of cattle from winter to summer range and back; it would be a great convenience for the people, especially children, visiting each other in the area; and, it would generally be of advantage to the road and traffic administration of the area by Missoula County. The property owner agreed that if the Houle Creek underpass were constructed he would withdraw his demand for one on his property.

Broadly speaking, the property owner's evidence tended to show that the convenience of the area and its residents would well be served by the underpass and the cost would approximately offset the severance damage for impairment of access if the underpass were not built.

At the conclusion of the hearing, the court indicated its feeling "that the general public good requires some kind of continuation of the Houle Creek Road from north to south so that the Interstate doesn't block it" and that "the Highway must construct this facility in such a manner as the continue the availability of the Houle Creek Road for the general public."

This was followed by a formal written order of the court dated March 18, 1969, ordering the property condemned, letting the state into possession, and ordering:

"* * * that Plaintiff incorporate into such of its interstate highway construction plans and designs as are pertinent to the premises herein condemned, such structure or structures as will allow for two lane access across the proposed interstate highway upon and by means of the certain Missoula County road, known and designated as the 'Houle Creek Road', which road is immediately adjacent to the westerly side of the property herein condemned. The plans are subject to approval by this Court."

The state appeals from this order setting forth the following issues for review:

(1) Did the district court err in ordering the state to provide access?

(2) Did the district court err in ordering a crossing structure on land outside the "take"?

(3) Did the district court err in requiring the crossing structure plans to be submitted to it for approval?

Directing our attention to the first issue, we observe that there are two germane Montana statutes. Section 93-9904, R.C. M.1947, provides in part:

"The private property which may be taken under [eminent domain proceedings] includes:

"5. All rights of way for any and all [public uses] * * * and the lands held and used in connection therewith must be subject to be connected with, crossed, or intersected by any other right of way of improvements or structures thereon. They must also be subject to a limited use, in common with the owner thereof, when necessary; but such uses, crossings, intersections, and connections must be made in [a] manner most compatible with the greatest public benefit and [the] least private injury."

A second statute defines the power of the district court in eminent domain proceedings. Section 93-9911, R.C.M.1947, provides in part as follows:

"The court or judge has power:

"1. To regulate and determine the place and manner of making the connections and crossings, and enjoying the common uses mentioned in subdivision 5, section 93-9904 * * *."

These statutes have heretofore been construed by this Court as authorizing the district court to order the State Highway Commission to construct and maintain at its own expense an underpass across an interstate highway bisecting a ranch. State ex rel. State Highway Comm'n v. Wheeler, 148 Mont. 246, 419 P.2d 492. In *Wheeler*, the Court expressed its ruling in the following language:

"Here the appellant by its action takes a 6,600 foot strip from the respondent through the middle of his ranch. It denied the main access route to the ranch. The district judge in his findings of fact and conclusions of law of November 17, 1964, quite properly considered the effect of the bisecting highway to the ranch operations in directing that the underpass be built. This the district court can properly do under the provisions of section 93-9911 (1), R.C.M.1947.''

This Court's opinion in *Wheeler* went on to point out that the district court is charged with certain duties relating to the protection of private property by section 93-9911(1), R.C.M. 1947, which must be read in conjunction with section 93-9904(5), R.C.M.1947.

In the instant case the property owner had direct access across the highway and the railroad track by means of a private grade crossing joining his lands to the north with those to the south. He and other residents in the area had direct access to and across the highway and railroad track by a public grade crossing on a county road known as the Houle Creek Road. Both these access routes would be eliminated by the proposed interstate highway, thus requiring the property owner and other residents of the area to travel to the interchange at Huson, 1½ miles to the west, or to the interchange at Frenchtown, 4 miles to the east. The testimony is undisputed that it would substantially interfere with the property owner's farming and ranching operations. Although the resolution of the State Highway Commission establishes a disputable presumption that its construction plan is compatible with the greatest public benefit and the least private injury, (section 32-3904, R.C.M.1947; State Highway Comm'n v. Yost Farm Co., 142 Mont. 239, 384 P.2d 277), where, as here, the evidence at the hearing indicates otherwise, the statutory presumption must yield to the facts. Accordingly, we hold in the instant case that the trial court was correct and well within its authority in ordering the state to provide access.

Before passing to the next issue, we observe that cases such as Erie v. State Highway Comm'n, Mont., 461 P.2d 207, 26 St.Rep. 713; and State Highway Comm'n v. Crossen-Nissen Co., 145 Mont. 251, 400 P.2d 283, wherein decisions of the State Highway Commission on interchanges and routing were upheld, do not support the state's position here. The *Erie* decision was based upon administrative law; did not involve eminent domain proceedings; and thus, is clearly distinguishable. *Crossen-Nissen,* an eminent domain proceeding, is distinguishable on the basis that the Commission decision appeared to be compatible with the greatest public good and the least private injury on the basis of conflicting evidence.

▇▇ Proceeding to the second issue, the state argues that the court erred in ordering the state to provide a crossing structure across a controlled access highway, contrary to engineering plans, where the location for such structure is not within the description of the premises sought to be condemned nor owned nor possessed by the defendant. This has reference to the fact that access was ordered over an existing county road known as the Houle Creek Road, rather than on defendant's own property. But, if the greatest public benefit and the least private injury require a crossing on public lands already devoted to road purposes, rather than across defendant's private property, must that basic principle yield? Of course not! If the Highway Commission construction plans did not include the access in question, how could land for such access possibly have been included in the description of the "take", or the owners thereof named as defendants? Here there is no evidence that any land other than the county road right-of-way will be needed to provide the required access, and county roads can clearly be used for state and interstate highway purposes. See section 32-1613, 32-2006, 32-4308, R.C.M.1947.

The final issue concerns whether the district court is empowered to order the construction plans to be submitted to it for its approval. At the conclusion of the "necessity" hearing

and before entering the order now appealed from, the district court recognized that while the court was empowered to order the Highway Commission to provide access, it was the prerogative of the Highway Commission to engineer and construct the access facility. The court phrased this recognition in the following language:

"But I don't want to tell the Highway what to build or how to build it, certainly I am no engineer, but I think I make myself clear, I think the public good requires something of the sort, something that will continue the Houle Creek Road, and I will so order and leave the details up to somebody that knows what they are doing."

Thereafter the district court entered its order requiring the Highway Commission to "incorporate into such of its interstate highway construction plans and designs * * * such * * * structures, as will allow for two lane access across the proposed interstate highway * * * by means * * * [of the Houle Creek County Road] * * *."

However, the district court, in an excess of caution and concern that proper access be provided, added the additional requirement that "The plans are subject to approval by this Court." This the district court was not empowered to do. Details of engineering design and construction are within the purview of the activities of the Highway Commission; and, while the district court is empowered to order a certain end result (as by here ordering two lane access over the Houle Creek Road), the court for rather obvious reasons is not qualified nor staffed to supervise the design or construction of the facility. Adequate remedies are available both to the court and to the property owner to ensure compliance with the court's order.

Accordingly, the words "The plans are subject to approval by this Court" are stricken from the court's order of March 18, 1969, and such order as modified is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, JOHN C. HARRISON, and BONNER, concur.