NO. 94-441

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MONTANA POWER COMPANY, a Montana
Corporation,

   Plaintiff and Respondent,

  -v-

BURLINGTON NORTHERN RAILROAD COMPANY,
a subsidiary of BURLINGTON
NORTHERN, INC.,

   Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
      In and for the County of Cascade,
      The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     J. Daniel Hoven, Ken C. Crippen, Browning, Kaleczyc,
     Berry & Hoven, Helena, Montana

   For Respondent:

     Joseph W. Sabol, Bozeman, Montana

**FILED**

JUL 25 1995

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Heard and Submitted: May 18, 1995

Decided: July 25, 1995

Clerk

Justice Fred J. Weber delivered the Opinion of the Court

This is an appeal from a decision of the Eighth Judicial District Court granting Montana Power Company's (MPC) Preliminary Condemnation Order and Order of Possession of the easement through Burlington Northern's (BN) property. We affirm and remand to the District Court as herein specified.

We restate the issues on appeal:

I.   Did the District Court err when it found an easement through BN's property was necessary for the intended use and subject to condemnation?

II.  Did the District Court err when it found that MPC's transmission line was a more necessary use?

III. Did the District Court err when it failed to include any of the requested provisions in its Order of Possession?

MPC has contracted with various railroads using wire-line permits to construct, operate, and maintain electric transmission lines through railroad rights-of-way for over fifty years. Currently, MPC operates transmission lines through such rights-of-way under 1,400 wire-line permits provided by BN.

In 1990, MPC determined additional facilities needed to be constructed in southwest Great Falls to adequately service its customers as required by law. The line's construction cost approximately $2.2 million. BN does not dispute the need nor the location of the 100 kV transmission facility. MPC acquired easements by purchase on all private parcels of property along the proposed route for the transmission lines except for BN's property.

2

MPC offered to purchase an easement interest for the Great Falls transmission facility through BN's property. BN offered to grant a wire-line permit instead. MPC claimed the permit's revocability and indemnification clauses were onerous and rejected BN's offer.

Subsequently BN offered an easement to MPC which incorporated a Memorandum of Understanding which BN claimed met MPC's concerns regarding permanency while addressing the issue of indemnification which was of concern to BN. MPC rejected BN's offer of an easement because MPC claimed the Memorandum of Understanding granted to BN the sole and exclusive option of revocation. Finally, in order to facilitate MPC's request to begin construction of the transmission line, BN offered a revised wire-line permit extending the termination provision from 30 days to 180 days. MPC rejected this offer as well.

MPC filed a Complaint together with a request for an Order to Show Cause in the Eighth Judicial District Court to condemn an easement over BN's property for the purpose of constructing, operating, and maintaining an electric transmission line. BN filed a motion for Summary Judgment in its favor with a supporting brief contending that MPC's purpose could be accomplished through a wire-line permit historically used by the two parties. MPC filed a brief in opposition to BN's motion and requested from the court a Preliminary Condemnation Order under § 70-30-203, MCA. The District Court found an easement was the minimum estate in BN's land necessary for MPC's proposed use as required for the public's interest. The court denied BN's motion for Summary Judgment and

granted MPC's Preliminary Condemnation Order.

Pursuant to statute, BN filed its Statement of Claim for $8,700--the value of the easement sought to be condemned. However, BN claimed the value represented that of the easement along with BN's Memorandum of Understanding or subject to additional compensation for BN's increased liability. After posting $8,700, MPC requested and was granted an Order of Possession. MPC then commenced construction of the electrical transmission facility. BN moved the court to reconsider this Order. The court denied BN's motion

From the District Court's issuance of the Preliminary Condemnation Order and the Order of Possession, BN appeals.

## Standard of Review

Our standard of review is set forth in Y A Bar Livestock Company v. Harkness (Mont. 1994), 887 P.2d 1211, 1213, 51 St.Rep. 1517, 1519, as follows:

> This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P.. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## Issue I

Did the District Court err when it found an easement through BN's property was necessary for the intended use and subject to condemnation?

Section 70-30-111, MCA, describes the required proof for a

4

taking by condemnation:

> Before property can be taken, the plaintiff must show by a preponderance of the evidence that the public interest requires the taking based on the following findings:
> (1) that the use to which it is to be applied is a use authorized by law;
> (2) that the taking is necessary to such use;
> (3) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use;
> (4) that an effort to obtain the interest sought to be condemned was made by submission of a written offer and that such offer was rejected.

Electric power lines are a public use authorized by law for the exercise of the right of eminent domain. Section 70-30-102(11), MCA

In determining if the taking is necessary for the authorized use, BN cites to Montana Power Company v. Bokma (1969), 153 Mont. 390, 398, 457 P.2d 769, 774. In that case, we held necessity means "reasonable, requisite, and proper for the accomplishment of the end in view, under the particular circumstances of the case." BN argues MPC's condemned easement over BN's railroad right-of-way is a greater interest than is necessary for the intended use. BN refers to Silver Bow County v. Hafer (1975), 166 Mont. 330, 333, 532 P.2d 691, 693, where we stated a condemning authority cannot acquire a greater interest or estate in the condemned property than the public use requires. To do so would obligate the public to pay for more than it needs

BN contends an easement without any restrictions is too great an interest when a wire-line permit will permit the desired use. BN claims a wire-line permit includes the right of entry upon and occupation of land and is a right in land which may be taken for

5

public use.  See § 70-30-104(4), MCA.  BN offered to MPC a wire-line permit which allowed for the location, construction, operation, maintenance, replacement and removal of MPC's Great Falls transmission line.  MPC rejected this offer.

In response to MPC's concern about the wire-line permit's lack of permanence and allowance for rent escalation, BN offered to MPC an Electric Transmission Line Non-exclusive Easement which incorporated a Memorandum of Understanding.  BN claims the proffered easement was non-revocable and contained a one-time fee payment.  Yet, BN argues MPC rejected this offer and insisted upon the condemnation of an unreasonably unrestricted easement.

BN alleges MPC sought an unrestricted easement because obtaining greater ownership rights was in the best interest of MPC's shareholders.  BN contends that allowing MPC to take an easement when a permit interest would suffice all in the name of shareholders' best interests violates fundamental principles this Court has upheld in eminent domain proceedings.

MPC claims that for eighty years it has obtained wire-line permits from BN for constructing electrical lines throughout Montana.  During that time, MPC showed that BN and its assignees subjected MPC to escalating fee provisions, restrictive indemnification provisions, and unilateral termination and relocation provisions.  MPC contends it could no longer justify the permit process required to be followed by BN.  A decision was made by MPC's corporate management to seek and obtain when necessary an easement from BN for the construction, operation and maintenance of

6

electrical transmission lines in BN's railroad rights-of-way.

MPC concedes that it can construct, operate and maintain the electrical transmission facility through a wire-line permit. However, MPC claims the permit offered by BN was revocable without cause 100 days after receipt of notice by MPC and contained onerous indemnification and relocation provisions. Under that permit's indemnification provisions, MPC argues it opens itself up to untold and unimagined exposure for BN's negligence. MPC submits that parties should be responsible for their own negligent conduct.

Furthermore, MPC would not accept the unilateral termination provisions of the permit. MPC argues the permit is nothing more than a mere license as evidenced by its very terms. A license is revocable at will and is not an interest in land. An easement, however, is a non-possessory interest in the land of another. MPC argues this distinction is significant when resolving questions about the applicability of the statutes of fraud and the availability of compensation in condemnation actions.

MPC claims the Non-exclusive Easement proffered by BN is nothing more than a permit/license no matter what the name implies. MPC submits that history has taught the company it is no longer appropriate for MPC to accept BN's wire-line permit, revised or not, or its supposed Non-exclusive Easement which, when coupled with the Memorandum of Understanding, grants to BN the sole and exclusive option of revocation.

Section 70-30-111, MCA, as previously set forth, requires that the plaintiff show by a preponderance of the evidence that the

7

public interest requires the taking based on four specified findings. Subparagraph (1) requires a finding that the use which is to be applied is a use authorized by law. Section 70-30-102(11), MCA, lists electric power lines as a public use subject to eminent domain proceedings. MPC produced uncontradicted testimony about the area's need for the electric transmission facility as well as the practicality of locating the line on BN's right-of-way. BN, in fact, does not contest the need nor the location of the transmission line. We affirm the conclusions of the District Court that subparagraph (1) of § 70-30-111, MCA, has been met.

Subparagraph (3) of § 70-30-111, MCA, pertains to the more necessary public use question which is addressed in the next issue. Subparagraph (4) of that section requires a finding that an effort was made to obtain the interest by submission of a written offer and that such offer was rejected. Again, there is no dispute that MPC made such an offer to BN and that its offer was rejected.

We next discuss subparagraph (2), which requires a finding that the taking is necessary to such use. This Court has stated that "necessary" is not intended to mean absolute, but rather reasonable, requisite, and proper. Montana Power Company, 457 P.2d at 774. As previously mentioned, MPC has submitted uncontradicted testimony as to the need for the electric transmission facility and practicality of locating it on the BN's right-of-way and BN does not contest that need nor the location. We conclude that the record contains substantial credible evidence to support the District Court's finding and conclusion that there was a public

8

need for a transmission line in southwest Great Falls which would run along BN's right-of-way.  We note that BN produced no evidence to contradict the choice of location or the public's need for the proposed line.

MPC contends that § 70-30-206, MCA, gives the District Court the power to determine if the interest sought to be condemned is necessary.  In pertinent part § 70-30-206, MCA, provides:

> 70-30-206.       Powers **of    court--preliminary condemnation   order.**  (1) The court has power to:
>         (a) regulate and determine the place and manner of making  the  connections  and  crossings  and  enjoying  the common  uses mentioned  in  70-30-103(1) (a) . .
>         (b) limit the interest in real property sought to be appropriated if in the opinion of the court the interest sought is not necessary.

In pertinent part § 70-30-103, MCA, provides:

> 70-30-103. **What private property may be taken.**  (1) The private  property  which  may  be  taken  under  this chapter  includes:
>         . . .
>         (e) all rights-of-way for any and all the purposes mentioned  in  70-30-102 and  any  and  all  structures  and improvements  thereon,  and  the  lands  held  and  used  in connection therewith must be subject to be connected with,  crossed,  or  intersected  by  any  other  rights-of-way of improvements or structures thereon.  They must also be subject  to a limited use in common with the owner thereof when  necessary; but  such  uses,  crossings,  intersections, and  connections  must  be  made  in  manner  most  compatible with  the  greatest  public  benefit  and  least  private injury.

MPC contends that under the foregoing sections, the District Court had the discretion to determine if the interest sought to be condemned  was  necessary.   It further contends that sufficient evidence  was  produced  to  establish  the  necessity  of  taking,  and that,  as a result,  BN now has the burden of proving the taking was excessive  or  arbitrary  and  therefore  unnecessary.   Lincoln/Lewis &

9

Clark County Sewer District v. Bossing (1985), 215 Mont. 235, 239, 696 P.2d 989, 991. MPC further stresses that the District Court found no basis on which to limit the interest sought after consideration of all of the evidence presented.

The District Court concluded "an easement for so long as the line is necessary is the minimum estate in [BN's] land required by MPC." As a result, the District Court concluded "MPC is entitled to a preliminary condemnation order for the easement sought to be condemned over, through and across the lands of [BN] as specifically described in Exhibit 'A' attached to [MPC's] Complaint for the construction of an electrical transmission line."

Applying the above-described standard of review, we hold that the District Court's conclusion, that an easement for the electric power transmission line is necessary, is supported by substantial credible evidence. We further hold that the District Court did not misapprehend the effect of the evidence and that our review of the record does not suggest to this Court that a mistake has been committed.

The dissent points out that it is possible for MPC to locate, construct, operate, maintain and remove the transmission facility with a wire-line permit. BN's proposed wire-line permit contained a 180 day termination provision. There is substantial evidence in the record to support a conclusion that the termination provision is unreasonable and improper considering the expenses of over $2 million to initially construct the facility and the length of time which it takes to reconstruct or move such a facility as well as

10

the public's need for this particular facility. In response to this suggestion, we therefore conclude that there is substantial evidence to support the finding of the District Court that an easement was necessary as compared to such a wire-line permit. In addition, we conclude that the District Court did not misapprehend the evidence nor make a mistake in its findings.

We hold that the District Court did not err when it found an easement through BN's property was necessary for the intended use and subject to condemnation.

Issue II

Did the District Court err when it found that MPC's transmission line was a more necessary use?

Section 70-30-111(3), MCA, states that if the property is already appropriated to some public use, the public use to which it is condemned must be a more necessary use.

BN claims the District Court misapplied the legal analysis in its determination of "more necessary use". The District Court found the two public uses compatible, but then went on to find MPC's public use a more necessary use than that of BN. BN argues finding the uses compatible in the first instance made it unnecessary and inappropriate to make the determination of a more necessary use in favor of MPC. BN alleges the court was confused on this issue, and, therefore, erred in not including in its grant to MPC the historical provisions necessary to protect BN's pre-existing railroad.

MPC asserts the Legislature of the State of Montana intended

11

the classification of a "more necessary public use" to be required when a proposed use would destroy a prior one. Cocanougher v. Zeigler (1941), 112 Mont. 76, 112 P.2d 1058. MPC argues a mere inconvenience to the prior use or the occurrence of compensable damages is not sufficient to deny a grant of eminent domain for the proposed use. MPC alleges any potential damage to BN's operation would be marginal; therefore, the District Court correctly found the two uses compatible.

Paragraph 7(c) of the District Court's finding of fact states:

That MPC has shown by a preponderance of the evidence that the public interest requires the taking of a portion of [BN]'s right-of-way and:
. . .
c. That notwithstanding the fact that the right-of-way is already appropriated for a public use that the easement sought to be condemned by MPC for the electrical transmission line is a more _necessary public use and one which is compatible with the use of [BN's] land;
. .

Section 70-30-111(3), MCA, provides that if the property is already appropriated to a public use, the use to which it is to be applied must be determined by a preponderance of the evidence to be a more necessary public use. In Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491, 502-04, 748 P.2d 444, 451-52 (citing Butte, Anaconda & Pacific Railway Company v. The Montana Union Railway Company (1895), 16 Mont. 504, 538, 41 P. 232, 244), we recognized that "'our legislature has imposed upon the court the additional responsibility of judicially determining whether the use to which the appellants did or would put the particular lands is a more necessary one to the public than that to which they have already been appropriated. .'" In interpreting the "more

12

necessary" requirement of § 70-30-111(3), MCA, we have held that this determination affects condemnation proceedings only when we have two public uses that are not compatible uses. <u>Montana Talc,</u> 748 P.2d at 452; <u>Cocanougher,</u> 112 P.2d at 1061; <u>Butte, Anaconda & Pacific,</u> 41 P. at 244.

In <u>Cocanousher,</u> the issue presented was whether the plaintiff and defendant could have a joint use of a water supply ditch where one use was not more necessary than the other. In that case, the Court stated:

> The next question that arises concerns the legal question of whether or not, as a matter of law, one may condemn a right-of-way through a ditch on another's land where the ditch is being used to irrigate the latter's land. Defendant invokes subdivision 3 of section 9936, Revised Codes [same as subparagraph (3) of § 70-30-111, MCA] Under this subdivision the real question is: Will the taking of this private property, already dedicated to one public use, destroy the prior public use? Or, in other words, will the enlargement and joint use of the ditch in question result in destroying or materially injuring the defendant's right to the use of the ditch? That subdivision can only apply where there is a taking of the property dedicated to a public use and appropriating it to another public use. The implication is clear that the legislature had in mind in enacting that subdivision, when it speaks of a more necessary public use than that to which the property is already dedicated, that the latter use is such as will destroy the prior use. That not being the case, subdivision 3 does not inhibit the condemnation here sought.

<u>Cocanousher,</u> 112 P.2d at 1060

MPC seeks to condemn private property already dedicated to one public use in order for it to provide a different public use. In following <u>Cocanougher,</u> we must ask whether MPC's proposed use will destroy or materially injure BN's prior use. The District Court found the two public uses to be compatible uses. BN and MPC both

13

agree that the two uses could be made compatible. The latter use does not inhibit the prior use; therefore, we conclude subsection (3) of § 70-30-111, MCA, does not apply to these condemnation procedures.

In Montana Talc Co., we refer to Cocanougher's extensive discussion of the requirement in § 70-30-111(3), MCA, for a "more necessary" public use. We concluded:

> The proposed use must be "more necessary" where the effect of granting the succeeding public use condemnation will deprive the first owner of his use altogether. If the first owner will be completely deprived of his public use of appropriated property, such that his use will be defeated or seriously interfered with by the proposed condemnor's right if granted, the statute requiring a "more necessary" public use comes into play. The requirement of a more necessary public use "does not preclude condemnation for a joint use which will not interfere with the use thereof by the owner." Cocanousher, 112 P.2d at 1051. (Emphasis added.)

Montana Talc Co., 748 P.2d at 454.

BN's argument that "compatibility" and "more necessary" are inconsistent terms fails. A more necessary use can also be a compatible use. The District Court made a "more necessary" determination under the erroneous assumption that such determination was required under the statute. The court was not required to make that determination because MPC's use would not destroy nor materially injure BN's prior use. In any event, we conclude the court's "more necessary" determination is not reversible error because the court also found the two uses compatible.

We hold the District Court did not commit reversible error when it found that MPC's transmission line was a more necessary

14

use.

## Issue III

Did the District Court err when it failed to include any of the requested provisions in its Order of Possession?

The District Court granted to MPC the easement attached to MPC's complaint--the Overhead Electric Right-of-way Easement. That easement gave to MPC the right "to construct, operate, maintain, replace and remove an electric transmission line with electric distribution underbuild facilities, associated guy facilities, communication system and necessary appurtenances over, under, along and across that certain real property. . ." The easement included the "reasonable right of ingress to and egress from said transmission line right of way over lands of the Grantor using existing roads and trails where practicable, and the right to clear and remove all timber and brush from the right of way . . . and to cut and remove such trees outside of such right of way which may endanger said line or lines."

BN claims any grant to MPC should also address the location of poles, the design standards, clearances of lines, crossings, coordination during construction of the transmission line, indemnification for damages caused by or resulting from the operation of the transmission line and its relocation. Without these provisions, BN argues it may be unable to meet its statutory obligations to keep timely fixed schedules, furnish shipping facilities, construct drains and ditches, maintain fences and fire guards, and construct and maintain commercial spur tracks.

15

In addition, BN contends the District Court's grant to MPC unreasonably subjects BN to increased liability. BN's witness testified to the potential safety and operational hazards of locating high voltage transmission lines near steel railroad operations. BN claims the two parties have co-existed in the past solely because of the provisions included in the historical agreements. BN asks that the Court insert the provisions of the Memorandum of Understanding. The key provisions of such memorandum are the following:

. .
13.      Montana  Power  Company does  hereby  release, indemnify, and save harmless [BN] . . from and against all loss, damages, claims, demands, actions, causes of action, costs and expenses of every character which may result from any injury to or death of any person whomsoever, including but not limited to employees and agents of the parties hereto, or from loss of or damage to property of any kind or nature to whomsoever belonging, including but not limited to property owned by, leased to, or in the care, custody, and control of the parties hereto, when such injury, death, loss or damage is caused by or contributed to by, or arises from, the construction, installation, operation, maintenance, condition, use, removal or existence of the electric transmission line upon or adjacent to the Premises.

14.    It is understood by the parties that said electric transmission line will be in danger of damage or destruction by fire or explosion incident to the operation, maintenance, or improvement of the railway, and [MPC] accepts the [easement] subject to such dangers. It is, therefore, agreed, as one of the material considerations for such . . easement . . . that [MPC] hereby assumes all risk of loss, damage, or destruction to said electric transmission line without regard to whether such loss be occasioned by fire or sparks from locomotives, or other causes incident to or arising from the movement of locomotives, trains, or cars of any kind, misaligned switches, or in any respect from the operation, maintenance, or improvement of the railway, or to whether such loss or damage be the result of negligence or misconduct or any person in the employ or services of [BN], or of defective appliances, engines or

16

machinery, and [MPC] does hereby save and hold harmless [BN] from all such damage, claims, and losses to said electric **transmission line.**

15. Prior to construction, operation, maintenance, and/or **removal** of the transmission line or any part of the premises described on the electric transmission line . . easement . ., [MPC] shall furnish to [BN] a Railroad Protective Liability Policy. Such Railroad Protective Liability Policy shall list [BN] as the named insured and shall provide a minimum of Two Million Dollars ($2,000,000) for each bodily injury claim and property damage claim with an aggregate of Six Million Dollars ($6,000,000). In addition, [MPC] shall furnish to [BN] a Commercial General Liability Insurance Policy . . . listing Burlington Northern Railroad Company as the named insured. Such Commercial General Liability Policy shall provide a minimum of One Million Dollars ($1,000,000) per occurrence for claims arising out of bodily injury and property damage. [MPC] further agrees that prior to construction, operation, maintenance and/or removal of the transmission line, [BN] must expressly approve of the types and amounts of insurance coverage provided pursuant to this paragraph.

19. [MPC] agrees that if [BN] determines that the location of the electric transmission line must be changed for the relocation or placement of railroad tracks or operational improvements, or for reasons beyond the control of [BN], [BN] shall notify [MPC] of such plans and [BN] shall further use its best reasonable efforts to secure an alternative location for the electric transmission line. [MPC] shall then move the affected electric transmission line to such alternative location at [MPC]'s own expense, cost and risk as soon as practicable.

22. If the Premises described, or any part thereof, shall at any time cease to be used by [MPC] for the purposes of conducting electric currents through the electric transmission line, or should the Premises be converted to any other use whatsoever, or should [MPC] fail to perform any of the conditions contained in [this easement], then and in any such event, [BN], its successors and assigns, may, at its or their option, re-enter, retake and hold the Premises as of the present estate of [BN] without compensation to [MPC] or any other person whomsoever, for improvements or property removed, taken or destroyed, or liability for loss of, or damage to any part of the Premises or the improvements thereon, and all the right, title, interest, benefits and enjoyment of [MPC] in the premises, for any purposes

17

whatsoever, shall immediately cease.

Although MPC states in its brief that BN's wire-line permit and Non-exclusive Easement are untenable due to their revocability provisions (MPC specifically refers to ¶22 of BN's Memorandum of Understanding), the transcript of the proceedings reveals MPC agreed that both parties could be easily accommodated as to this issue. It is the indemnification provisions which the court found to be the real stumbling block.

MPC argued at the hearing that conditions included in BN's Memorandum of Understanding relating to design standards, coordination between the parties, safety, train delay and relocation should not be attached to the documents for condemnation because "it was always common place and common sense that the district manager notified BN before they came on the property .

[and, in addition,] they never intentionally did anything unsafe or that would cause harm or damage to BN or anybody else." MPC alleges BN insists upon the attachment of the provisions in the Memorandum of Understanding in order to unjustly limit the interest condemned.

In the District Court's Memorandum Decision attached to its Order Denying Defendant's Motion for Reconsideration of Order of Possession, the court concluded there was no statutory basis or requirement that protective conditions be set forth in the said Order of Possession. We agree that the eminent domain statues do not require protective conditions in an easement. However, the Montana Legislature has given to the courts the power to set forth

18

protective provisions in an order for condemnation.

> 70-30-206.   (1) The court has power to:
>      (a) regulate and determine the place and manner of making the connections and crossings and <u>enjoying the common uses</u> mentioned in 70-30-103(e) and of the occupying of canyons, passes, and defiles for railroad purposes, as permitted and regulated by the laws of this state or of the United States . . .   (Emphasis added.)

The common uses extend to:

> 70-30-103.   (1) The private property which may be taken under this chapter includes:
>      .
>      (e) all rights-of-way for any and all the purposes mentioned in 70-30-102 and any and all structures and improvements thereon, and the lands held and used in connection therewith must be subject to be connected with, crossed, or intersected by any other right-of-way of improvements or structures thereon. They must also be subject to a limited use in common with the owner thereof when necessary; but such uses, crossings, intersections, and connections must be made in manner most compatible with the greatest public benefit and least private injury.   .

Both railways and electric power lines are public uses enumerated in this chapter. Section 70-30-102(10),(11), MCA.

Under the facts of this case, we hold that the District Court did not commit reversible error when it failed to include any of the requested provisions in its Order of Possession. However, the District Court properly should have considered the foregoing statutes and determined if any of the proposed conditions should have been inserted in its Preliminary Condemnation Order or its Order of Possession. In the absence of such a determination, we hold the District Court shall determine if any of the conditions proposed by either party should be inserted in the subsequent Final Order of Condemnation.

19

Lavoie, 466 P.2d at 599.  The case at hand is comparable to Lavoie in that we have two uses that must be coordinated to achieve the greatest public benefit and the least private injury.  In a similar manner to Lavoie which considered reasonable access for the condemnee, we conclude it is reasonable under these circumstances for the District Court to consider what terms, if any, should be included in its Final Order of Condemnation.

We affirm the District Court's Preliminary Condemnation Order and its Order of Possession.  On remand the District Court shall take such action, including the holding of a hearing, which it finds to be necessary in order to comply with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
District Judge John R. Christensen
sitting for Justice Karla M. Gray

21

Justice James C. Nelson respectfully dissents.

I conclude that under the facts of this case and by reason of the findings made by the District Court, plaintiff has failed as a matter of law in its burden of proof under § 70-30-111, MCA. Moreover, as a consequence of our straining to interpret the eminent domain statutes to justify the result, we have also, of necessity, but improperly, now embroiled the District Court in the task of writing what is, essentially, a contract for Montana Power Company and Burlington Northern Railroad.

Among other requirements, § 70-30-111, MCA, mandates that before property can be taken by condemnation, the plaintiff must prove and the trial court must find:

> (2) that the taking is necessary to such use; [and]
> (3) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use. . .

As to subsection (2), the record in this case demonstrates that MPC's taking of BN's property by eminent domain was *not* necessary to MPC's location, construction and maintenance of its powerline. In point of fact, the evidence showed unequivocally that MPC currently operates and for decades has operated, miles upon miles of transmission line under well over a thousand wire-line permits of the very sort at issue here without any of the drastic consequences that it argues now justifies condemnation. In that time only one easement was issued by BN to MPC. MPC officials testified in depositions that MPC could locate, construct, operate, maintain, replace and remove the Great Falls electric transmission

22

line under a wire-line permit containing the permit fee, revocation, relocation and indemnification provisions objected to. In fact, the transmission line was located and constructed on and over BN's property during the pendency of this litigation.

While MPC maintains that the same wire-line permit provisions that it has operated under for years are now unacceptable and onerous, the record clearly demonstrates that it has and does and would, in this case, locate, construct, operate, maintain, inspect, replace and remove its transmission line under a wire-line permit without the necessity of taking BN's property by eminent domain.

In Silver Bow County v. Hafer (1975), 166 Mont. 330, 532 P.2d 691, we held to the long established principle in condemnation cases that it is an unconstitutional taking to allow the condemnor to acquire a greater interest or estate in the condemned property than the public use requires. We stated:

> It necessarily follows from the principle that property cannot constitutionally be taken by eminent domain except for the public use, that no more property can be taken by eminent domain than the public use requires, since all that might be appropriated in excess of the public needs would not be taken for the public use. While considerable latitude is allowed in providing for the anticipated expansion of the requirements of the public, the rule itself is well established, and applies both to the amount of property to be acquired for public use and to the estate or interest acquired in such property. If an easement will satisfy the public needs, to take the fee would be unjust to the owner, who is entitled to retain whatever the public needs do not require, and to the public, which should not be obliged to pay for more than it needs. (Empahsis added.)

Silver Bow County, 532 P.2d at 693. Necessity contemplates that which is "reasonably requisite and proper for the accomplishment of the purpose for which it is sought under the peculiar circumstances

23

of each case." State Highway Com'n v. Crossen-Nissen Co. (1965), *145* Mont. 251, 254, 400 P.2d 283, 284.

As stated above, § 70-30-111, MCA, requires that "[b]efore property can be taken, the plaintiff must show by a preponderance of the evidence that the public interest requires the taking based on [a finding] . . that the ta<u>kins is necessary to such use.</u>" (Emphasis added). In its discussion of this statutory requirement, the majority misses the point completely. This statutory requirement does not focus on whether the use (here, the transmission line) is necessary, but, rather, on whether the *taking* (in this case an unrestricted easement versus a wire-line permit) is necessary to such use. No one, including BN, maintains that it is not necessary that MPC construct its transmission line. That we gratuitously conclude that the record supports what everyone has already conceded does not validate our erroneous application of this statutory requirement. We have effectively merged the requirements of subsections (1) and (2) of the statute. Now, if the condemnor shows that the public use is lawful and that it needs the property, that ends the inquiry; that the manner of taking sought may not be required to obtain the use is no longer of consequence. MPC's burden under subsection (2) of the statute was to prove that taking by unrestricted easement was necessary to locate, construct, operate and maintain its transmission line. The proof was to the contrary: taking by unrestricted easement was not necessary to such use.

On the record here, it was not "necessary" that MPC take by

condemnation an easement on BN's property to accomplish the location, construction, maintenance and operation of its transmission line. That could and would have been accomplished, as it had many, many times in the past under the offered wire-line permit. In condemning BN's property under such circumstances, MPC has unconstitutionally acquired a greater interest and estate in that property than the public use requires.

While it may be more advantageous in a number of ways for MPC to construct, maintain and operate its transmission line without any of the restrictions imposed by BN, I find no authority for the proposition that the condemnation statutes should be used merely to insure that the condemnor be placed in a more favorable position than it otherwise could through negotiation or resort to other legal remedies. While MPC and the majority raise the specter of BN cancelling one of its wire-line permits after the expenditure of millions of dollars in construction costs, the record does not reflect that has actually happened in the lengthy history that MPC has been locating and maintaining powerlines on BN property, and I suspect if that had been BN's pattern, MPC would have been in court decades before this. The courts have no business in this dispute, and the condemnation statutes have been misused. Accordingly, I dissent from our decision on Issue I.

With respect to Issue II, the District Court found that MPC's transmission line is a more necessary use than BN's railroad operation and that the two uses are compatible. These two findings are inconsistent with each other under our previous interpretations

25

of subsection (3) of § 70-30-111, MCA.  In Cocanougher v. Zeiegler (1941), 112 Mont. 76,  112 P.2d 1058,  we held that the issue of whether one public use is "more necessary" than another public use is not reached unless the proposed use and the pre-existing use *cannot* compatibly co-exist on the same property and that the proposed use *would destroy* the pre-existing use. Cocanougher, 112 P.2d at 1060.  In Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491,  *748* P.2d 444,  we defined the inquiry as being whether the proposed use would defeat or seriously interfere  with the pre-existing use.  Montana Talc, *748* P.2d at 452.

On the record here it is clear that not only could MPC's and BN's public uses co-exist without serious interference on the same property, but that, historically, such uses have and currently do so co-exist under the very provisions of the wire-line agreements to which MPC now objects.  Accordingly, under our case law, it was improper for the District Court to even reach the issue of "more necessary" use given its finding that the two uses were compatible.

Aside from the District Court's inconsistent findings, the real problem here, however, is  alluded to in the majority's opinion.  While MPC's use and BN's use of BN's property "could be made  compatible," the two uses are not now compatible under the unrestricted easement granted by the court.  Hence, we conclude that it is necessary to send this matter back to the District Court to put into the easement at least some of the provisions that have been historically included in the wire-line permits so that the two uses will be compatible.  That, of course, begs the question: If

the two uses were compatible under the provisions included in the wire-line permits historically utilized by the parties and are not compatible under the unrestricted easement granted by the court, thus necessitating at least some of the permit provisions being put back into the easement, what exactly has the instant condemnation accomplished?    The answer to that question is simple:    This condemnation has allowed MPC to take a greater estate in BN's property than was necessary to accomplish the use.

Again, our discussion here and under Issue I, demonstrates that the eminent domain statutes have been misused, and prior case law has been ignored.  Accordingly, I dissent from our decision on Issue II.

Finally, in Issue III, we come face to face with the consequences of our decisions on Issues I and II.  It is important to reiterate that for decades MPC has successfully located, operated and maintained its transmission lines on and over BN property via the use of wire-line permits.  There is really no dispute that, if it had not successfully condemned BN's property, MPC could have and would have located, operated and maintained the transmission line involved in this case under a wire-line permit. Reduced to its essentials, the problem is that MPC became dissatisfied with having to live with the various restrictions and requirements which BN imposed on the granting of its wire-line permits, but which, nevertheless, were part and parcel of the parties' compatible and co-existent use of BN's property for decades.  Depending on perspective, the restrictions were either

27

**onerous,** threatening and unfair or necessary to insure the safe and effective operation of a high tension powerline on and over a **metal-intensive** railroad.

The point to be made is that, without the intervention of the courts, MPC and BN have successfully dealt with this situation for years and would just as likely have continued to successfully deal with this situation in the future if left to their own devices. Importantly, there was no specific instance of BN wrongfully revoking one of MPC's wire-line permits or seeking to indemnify its own negligence at MPC's expense alleged or before the court. Had that been the case, then MPC no doubt would have had grounds to pursue other appropriate legal remedies through the courts.

Rather, what brought this case to court was a dispute over the terms of a proposed contract--a wire-line permit--and speculation about what BN *might* do under the contract proposed. Under such circumstances, the condemnation statutes are not the appropriate vehicle to resolve that dispute, and if MPC had been held to its burden of proof under § 70-30-111(2), MCA, no condemnation order would have been issued. The parties would have been simply left to work out the details of their respective operations or to seek court intervention in the event of some *actual* problem with some *specific* permit or incident.

Now, however, since we have upheld the District Court's condemnation of BN's property, MPC has the right to occupy that property without any of the restrictions that are likely necessary to protect BN's operations and the public safety. Even we

*28*

recognize that situation is unwise and unworkable. So to remedy that, we have instructed the trial court to determine and order, the terms governing the parties relationship--terms that they should have (and would have) negotiated and written themselves via contract if left to their own devices. Leaving aside the issue of the value, technical and business judgments that the District Court is going to have to make to accomplish that and the question of why a district court has any particular expertise to determine the rules and minutiae regulating the location, operation, maintenance, and replacement of a high tension powerline on and over a busy railroad, there is a more fundamental legal problem involved.

Quite simply, there is no authority in the condemnation statutes which would allow the District Court to do what we have now ordered it to do. At least the District Court recognized that problem when it concluded that there was "no statutory basis or requirement that protective conditions be set forth in the said Order of Possession." Moreover, our reliance on § 70-30-206, MCA, is misplaced and runs directly counter to our previous interpretation of the limited authority of the district court under that statute. In State Highway Commission v. Lavoie (1970), 155 Mont. 33, 466 P.2d 594, we held that while the District Court was empowered to order the end result--i.e. the crossing itself--it was not authorized to supervise the minutiae of the design and construction of the facility. We stated:

> However, the district court, in an excess of caution and concern that proper access be provided, added the additional requirement that "The plans are subject to approval by this Court." This the district court was not

29

> empowered to do. Details of engineering design and construction are within the purview of the activities of the Highway Commission; and, while the district court is empowered to order a certain end result (as by here ordering two lane access over the Houle Creek Road), the court for rather obvious reasons is not qualified nor staffed to supervise the design or construction of the facility. Adequate remedies are available both to the court and to the property owner to ensure compliance with the court's order.

Lavoie, 466 P.2d at 599. While the majority seeks to distinguish Lavoie, its distinction is without a meaningful difference.

Moreover, we stated in Lincoln/Lewis & Clark Cty. Sewer v. Bossing (1985), 215 Mont. 235, 696 P.2d 989, that "[c]ourts generally do not have the power to determine what public improvements shall be constructed, where they shall be located, and when the power of eminent domain shall be exercised." Lincoln/Lewis, 696 P.2d at 991. if we have interpreted our eminent domain statutes as to preclude the courts from those powers, it follows that courts, similarly, do not have the power to condition the condemnation order on detailed conditions as to how the parties are to mutually utilize the condemned property.

Having lost sight of our obligation to drain the swamp, we have, worse, thrown the trial court into the water with instructions to subdue the alligators. Accordingly, I also respectfully dissent from our decision on Issue III..

_____
Justice

30