JUSTICE NELSON
respectfully dissents.
I conclude that under the facts of this case and by reason of the findings made by the District Court, plaintiff has failed as a matter of law in its burden of proof under § 70-30-111, MCA. Moreover, as a consequence of our straining to interpret the eminent domain statutes to justify the result, we have also, of necessity, but improperly, now embroiled the District Court in the task of writing what is, essentially, a contract for Montana Power Company and Burlington Northern Railroad.
Among other requirements, § 70-30-111, MCA, mandates that before property can be taken by condemnation, the plaintiff must prove and the trial court must find:
(2) that the taking is necessary to such use; [and]
(3) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use. ...
As to subsection (2), the record in this case demonstrates that MPC’s taking of BN’s property by eminent domain was not necessary to MPC’s location, construction and maintenance of its powerline. In point of fact, the evidence showed unequivocally that MPC currently operates and for decades has operated, miles upon miles of transmission line under well over a thousand wire-line permits of the very sort at issue here without any of the drastic consequences that it argues now justifies condemnation. In that time only one easement was issued by BN to MPC. MPC officials testified in depositions that MPC could locate, construct, operate, maintain, replace and remove the Great Falls electric transmission line under a wire-line permit containing the permit fee, revocation, relocation and indemnification provisions objected to. In fact, the transmission line was located and constructed on and over BN’s property during the pendency of this litigation.
While MPC maintains that the same wire-line permit provisions that it has operated under for years are now unacceptable and onerous, the record clearly demonstrates that it has and does and would, in this case, locate, construct, operate, maintain, inspect, replace and remove its transmission line under a wire-line permit without the necessity of taking BN’s property by eminent domain.
*241 In Silver Bow County v. Hafer (1975), 166 Mont. 330, 532 P.2d 691, we held to the long established principle in condemnation cases that it is an unconstitutional taking to allow the condemnor to acquire a greater interest or estate in the condemned property than the public use requires. We stated:
It necessarily follows from the principle that property cannot constitutionally be taken by eminent domain except for the public use, that no more property can be taken by eminent domain than the public use requires, since all that might be appropriated in excess of the public needs would not be taken for the public use. While considerable latitude is allowed in providing for the anticipated expansion of the requirements of the public, the rule itself is well established, and applies both to the amount of property to be acquired for public use and to the estate or interest acquired in such property. If an easement will satisfy the public needs, to take the fee would be unjust to the owner, who is entitled to retain whatever the public needs do not require, and to the public, which should not be obliged to pay for more than it needs. (Emphasis added.)
Silver Bow County, 532 P.2d at 693. Necessity contemplates that which is “reasonably requisite and proper for the accomplishment of the purpose for which it is sought under the peculiar circumstances of each case.” State Highway Com’n v. Crossen-Nissen Co. (1965), 145 Mont. 251, 254, 400 P.2d 283, 284.
As stated above, § 70-30-111, MCA, requires that “[b]efore property can be taken, the plaintiff must show by a preponderance of the evidence that the public interest requires the taking based on [a finding]... that the taking is necessary to such use.” (Emphasis added). In its discussion of this statutory requirement, the majority misses the point completely. This statutory requirement does not focus on whether the use (here, the transmission line) is necessary, but, rather, on whether the taking (in this case an unrestricted easement versus a wire-line permit) is necessary to such use. No one, including BN, maintains that it is not necessary that MPC construct its transmission line. That we gratuitously conclude that the record supports what everyone has already conceded does not validate our erroneous application of this statutory requirement. We have effectively merged the requirements of subsections (1) and (2) of the statute. Now, if the condemnor shows that the public use is lawful and that it needs the property, that ends the inquiry; that the manner of taking sought may not be required to obtain the use is no longer of consequence. MPC’s *242 burden under subsection (2) of the statute was to prove that taking by unrestricted easement was necessary to locate, construct, operate and maintain its transmission line. The proof was to the contrary: taking by unrestricted easement was not necessary to such use.
On the record here, it was not “necessary” that MPC take by condemnation an easement on BN’s property to accomplish the location, construction, maintenance and operation of its transmission line. That could and would have been accomplished, as it had many, many times in the past under the offered wire-line permit. In condemning BN’s property under such circumstances, MPC has unconstitutionally acquired a greater interest and estate in that property than the public use requires.
While it may be more advantageous in a number of ways for MPC to construct, maintain and operate its transmission line without any of the restrictions imposed by BN, I find no authority for the proposition that the condemnation statutes should be used merely to insure that the condemnor be placed in a more favorable position than it otherwise could through negotiation or resort to other legal remedies. While MPC and the majority raise the specter of BN cancelling one of its wire-line permits after the expenditure of millions of dollars in construction costs, the record does not reflect that has actually happened in the lengthy history that MPC has been locating and maintaining powerlines on BN property, and I suspect if that had been BN’s pattern, MPC would have been in court decades before this. The courts have no business in this dispute, and the condemnation statutes have been misused. Accordingly, I dissent from our decision on Issue I.
With respect to Issue II, the District Court found that MPC’s transmission line is a more necessary use than BN’s railroad operation and that the two uses are compatible. These two findings are inconsistent with each other under our previous interpretations of subsection (3) of § 70-30-111, MCA. In Cocanougher v. Zeigler (1941), 112 Mont. 76, 112 P.2d 1058, we held that the issue of whether one public use is “more necessary’ than another public use is not reached unless the proposed use and the pre-existing use cannot compatibly co-exist on the same property and that the proposed use would destroy the pre-existing use. Cocanougher, 112 P.2d at 1060. In Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491, 748 P.2d 444, we defined the inquiry as being whether the proposed use would defeat or seriously interfere with the pre-existing use. Montana Talc, 748 P.2d at 452.
*243 On the record here it is clear that not only could MPC’s and BN’s public uses co-exist without serious interference on the same property, but that, historically, such uses have and currently do so co-exist under the very provisions of the wire-line agreements to which MPC now objects. Accordingly, under our case law, it was improper for the District Court to even reach the issue of “more necessary” use given its finding that the two uses were compatible.
Aside from the District Court’s inconsistent findings, the real problem here, however, is alluded to in the majority’s opinion. While MPC’s use and BN’s use of BN’s property “could be made compatible,” the two uses are not now compatible under the unrestricted easement granted by the court. Hence, we conclude that it is necessary to send this matter back to the District Court to put into the easement at least some of the provisions that have been historically included in the wire-line permits so that the two uses will be compatible. That, of course, begs the question: If the two uses were compatible under the provisions included in the wire-line permits historically utilized by the parties and are not compatible under the unrestricted easement granted by the court, thus necessitating at least some of the permit provisions being put back into the easement, what exactly has the instant condemnation accomplished? The answer to that question is simple: This condemnation has allowed MPC to take a greater estate in BN’s property than was necessary to accomplish the use.
Again, our discussion here and under Issue I, demonstrates that the eminent domain statutes have been misused, and prior case law has been ignored. Accordingly, I dissent from our decision on Issue II.
Finally, in Issue III, we come face to face with the consequences of our decisions on Issues I and II. It is important to reiterate that for decades MPC has successfully located, operated and maintained its transmission lines on and over BN property via the use of wire-line permits. There is really no dispute that, if it had not successfully condemned BN’s property, MPC could have and would have located, operated and maintained the transmission line involved in this case under a wire-line permit. Reduced to its essentials, the problem is that MPC became dissatisfied with having to live with the various restrictions and requirements which BN imposed on the granting of its wire-line permits, but which, nevertheless, were part and parcel of the parties’ compatible and co-existent use of BN’s property for decades. Depending on perspective, the restrictions were either onerous, threatening and unfair or necessary to insure the safe and *244 effective operation of a high tension powerline on and over a metal-intensive railroad.
The point to be made is that, without the intervention of the courts, MPC and BN have successfully dealt with this situation for years and would just as likely have continued to successfully deal with this situation in the future if left to their own devices. Importantly, there was no specific instance of BN wrongfully revoking one of MPC’s wire-line permits or seeking to indemnify its own negligence at MPC’s expense alleged or before the court. Had that been the case, then MPC no doubt would have had grounds to pursue other appropriate legal remedies through the courts.
Rather, what brought this case to court was a dispute over the terms of a proposed contract — a wire-line permit — and speculation about what BN might do under the contract proposed. Under such circumstances, the condemnation statutes are not the appropriate vehicle to resolve that dispute, and if MPC had been held to its burden of proof under § 70-30-111(2), MCA, no condemnation order would have been issued. The parties would have been simply left to work out the details of their respective operations or to seek court intervention in the event of some actual problem with some specific permit or incident.
Now, however, since we have upheld the District Court’s condemnation of BN’s property, MPC has the right to occupy that property without any of the restrictions that are likely necessary to protect BN’s operations and the public safety. Even we recognize that situation is unwise and unworkable. So to remedy that, we have instructed the trial court to determine and order, the terms governing the parties relationship — terms that they should have (and would have) negotiated and written themselves via contract if left to their own devices. Leaving aside the issue of the value, technical and business judgments that the District Court is going to have to make to accomplish that and the question of why a district court has any particular expertise to determine the rules and minutiae regulating the location, operation, maintenance, and replacement of a high tension powerline on and over a busy railroad, there is a more fundamental legal problem involved.
Quite simply, there is no authority in the condemnation statutes which would allow the District Court to do what we have now ordered it to do. At least the District Court recognized that problem when it concluded that there was “no statutory basis or requirement that protective conditions be set forth in the said Order of Possession.” *245 Moreover, our reliance on § 70-30-206, MCA, is misplaced and runs directly counter to our previous interpretation of the limited authority of the district court under that statute. In State Highway Commission v. Lavoie (1970), 155 Mont. 39, 466 P.2d 594, we held that while the District Court was empowered to order the end result — i.e. the crossing itself — it was not authorized to supervise the minutiae of the design and construction of the facility. We stated:
However, the district court, in an excess of caution and concern that proper access be provided, added the additional requirement that “The plans are subject to approval by this Court.” This the district court was not empowered to do. Details of engineering design and construction are within the purview of the activities of the Highway Commission; and, while the district court is empowered to order a certain end result (as by here ordering two lane access over the Houle Creek Road), the court for rather obvious reasons is not qualified nor staffed to supervise the design or construction of the facility. Adequate remedies are available both to the court and to the property owner to ensure compliance with the court’s order.
Lavoie, 466 P.2d at 599. While the majority seeks to distinguish Lavoie, its distinction is without a meaningful difference.
Moreover, we stated in Lincoln/Lewis & Clark Cty. Sewer v. Bossing (1985), 215 Mont. 235, 696 P.2d 989, that “[c]ourts generally do not have the power to determine what public improvements shall be constructed, where they shall be located, and when the power of eminent domain shall be exercised.” Lincoln/Lewis, 696 P.2d at 991. If we have interpreted our eminent domain statutes as to preclude the courts from those powers, it follows that courts, similarly, do not have the power to condition the condemnation order on detailed conditions as to how the parties are to mutually utilize the condemned property.
Having lost sight of our obligation to drain the swamp, we have, worse, thrown the trial court into the water with instructions to subdue the alligators. Accordingly, I also respectfully dissent from our decision on Issue III.