STATE ex Rel. BUTTE–LOS ANGELES MINING CO., Relator, *v.* DISTRICT COURT et al., Respondents.

(No. 7,598.)

(Submitted June 17, 1936. Decided July 16, 1936.)

[60 Pac. (2d) 380.]

*Mr. John A. Shelton,* for Relator, submitted a brief and argued the cause orally.

*Messrs. McCaffery & McCaffery,* for Respondents, submitted a brief; *Mr. Joseph J. McCaffery* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding by which the relator seeks to have a judgment, No. 35769, of the district court for the Second Judicial District of the state of Montana in and for Silver Bow county, annulled and set aside and an order issued directing that court to grant the demands of the relator as set forth in its complaint. The complaint was filed on October 14, 1935, naming John J. McNamara and Foster Porter as defendants. Later it appears that McNamara acquired Porter's interest in the property involved, and the record shows that Porter was not served with summons.

The complaint in the action seeks to condemn under the right of eminent domain, and acquire the right to use, certain lands belonging to the defendant and located in Silver Bow county, for mining purposes. It appears that relator (plaintiff in the action) owns a certain mining claim referred to as the Tuxedo lode mining claim in section 28, township 4, range 9 west. Such mining claim is bounded on the north by what is known as the Lee mining claim, which is owned by the defendant. Section 27 lying directly east and bordering on the Tuxedo claim is owned by the Northern Pacific Railway Company and is under lease to the defendant for mining purposes. Some twenty years ago, and before section 27 was surveyed and title vested in the Northern Pacific Railway Company by patent from the federal government, certain parties filed a mineral claim, which claim covered portions of the Lee claim, the Tuxedo claim, and the Northern Pacific land in section 27, and

proceeded to run a tunnel to tap an ore vein on section 27. The portal of such tunnel is on the Lee claim and about 51 feet from the line between the Lee and Tuxedo claims. The Tuxedo and Lee claims are both located in section 28. After running approximately 51 feet through the Lee claim, the tunnel enters the Tuxedo claim, passing through one corner of the Tuxedo claim for about 200 feet, and then enters the Northern Pacific land in section 27. The purpose of running the tunnel was to tap the ore vein in the Northern Pacific land.

After the land was surveyed, the parties who made the original location discovered that they were on land belonging to the Northern Pacific and relocated their claim. Some time subsequent to the relocation of the claim the plaintiff paid the original locators some five hundred or a thousand dollars for an "option" on such claim, and plaintiff contends that it acquired the title of the original locators to all the property that they had to convey, including the tunnel, but there is nothing in the record in the way of a deed or other instrument evidencing the acquisition of such title by plaintiff. This question, however, we do not think vital to this controversy for the reasons we will presently mention.

Subsequent to the time that the plaintiff acquired its patent to the Tuxedo claim, the defendant acquired possessory title to the Lee claim and also obtained the lease on the Northern Pacific land in section 27, and for something like a year the latter has been taking out ore from the face of the tunnel in the Northern Pacific land and transporting it through the tunnel to the portal in the Lee claim and trucking the same from that point. The defendant in handling the ore taken out of section 27 thus passes through about 200 feet of the Tuxedo claim by means of the tunnel. The defendant has never obtained permission from the plaintiff to use the tunnel through the Tuxedo claim. The plaintiff desires to develop its property as a mining property and brought this proceeding for the purpose of condemning the 51 feet of tunnel that passes through the Lee claim as a roadway for its own use and purposes, and

it further demands the right to use certain portions of the land described in the complaint and located on the Lee claim, as a dumping ground, for ore bins and loading chutes. It is alleged in the complaint that it is practically impossible for plaintiff to operate on or develop its property unless it can acquire the exclusive right to use that part of the tunnel located on the Lee claim in connection with its developments, for the reason that there is no other outlet on account of the rough and uneven surface of the ground and surrounding territory. The prayer of the plaintiff is for the exclusive use of the 51 feet of the tunnel on the Lee claim as an exclusive roadway for the plaintiff. The detailed description of the land is set out in the complaint, and it is alleged that negotiations with the defendant for the purpose of acquiring the use of the tunnel have been carried on but have not resulted in any satisfactory arrangement between the parties. Certain correspondence relating to this phase of the controversy is made part of the complaint in the form of exhibits.

On the failure to arrive at an agreement by negotiations, an action was commenced by plaintiff to acquire the roadway under the right of eminent domain; an order was issued by the court citing the defendant to appear and show cause why the property should not be condemned as prayed for by the complaint; summons was duly issued, served and returned, and thereafter the defendant McNamara filed his answer in which all the material allegations of the complaint were denied, and first and second affirmative defenses were set up. The answer alleges that plaintiff has done no work upon its property of any consequence; that the tunnel, in running through the Tuxedo claim into section 27, does not pass through any mineral vein carrying ores of commercial value; that when the tunnel was located and driven the Tuxedo claim had not been located and the tunnel was on public land belonging to the United States, and that therefore the tunnel is "appurtenant" to and an "appendage" of the Northern Pacific land, and that such tunnel was driven and used for the purpose of mining and

developing the mineral land on the Northern Pacific land in section 27. In the second affirmative defense the defendant alleges that he has been operating for some seven months; that he is the sole owner of the Lee claim and the lease of the Northern Pacific land in section 27; that he has four men employed in mining and others to operate trucks, and has taken out and shipped some $12,000 worth of ore since operations were begun, and has expended certain moneys upon the roads in the neighborhood of the mine or claim in order to connect with and have a means of transportation to convey the ores taken from such claim to the highway two and one-half miles away. Defendant then states that he has been willing at all times to grant the plaintiff sufficient ground on which to erect bins, chutes and land to be used as a dumping ground without cost to the plaintiff, and is willing to make arrangements to use the tunnel in controversy on a common basis, and to likewise use the roads that were established and built for the purpose of transporting the ores from such claims and mines to the regular highway in common with the plaintiff. The answer further alleges that the purpose for which plaintiff seeks to condemn the 51 feet of tunnel located on the Lee claim is not a more necessary or useful purpose than that for which the defendant is now using such tunnel. It is further alleged in the answer that there is a large dump on the land sought to be condemned and that such dump contains valuable minerals which defendant claims and desires to retain and extract the values therefrom in the course of his mining operations. Defendant prays that any order that may be made by the court shall reserve to the defendant an equal right to the use of the tunnel in common with the plaintiff, and that the dump grounds and ore bin sites in use by the defendant shall not be interfered with. Plaintiff's reply denies all the material allegations of the answer and reiterates its contention that it cannot operate its property if it is denied the relief sought and that such property will in such contingency become practically valueless.

The trial court found substantially in accordance with the contention of the defendant, and the decree provides for the common use of the tunnel by the parties, specifying certain times that each shall have the use thereof. This proceeding followed.

Relator assigns six specifications of error, but such assignments do not, in our judgment, go fully to the merits of the questions involved in the controversy. The judgment of the trial court appears to us to be a reasonably fair and equitable adjustment of the controversy if the parties were willing to abide by it, but the relator is not so willing. Such being the case, it becomes our duty to determine the matter according to the statutes as we believe they apply.

The judgment grants to the parties the joint use of the tunnel from its portal to its face; specific provision is made for its use by the parties at different times of the day to avoid conflict. We do not see how that part of the tunnel which extends into section 27 could be of any use to the relator, and consideration of such part will not be further considered here.

We do not think that the judgment can stand for the reasons: (1) Because the only question that the trial court could decide under the pleadings in the action before it was whether or not the relator was entitled to have exclusive use of the 51 feet of the tunnel running through the Lee claim condemned and subjected to its exclusive use as a roadway; and (2) the court could not, in our opinion, grant the defendant any right to use that part of the tunnel running through the Tuxedo claim in the action brought by the plaintiff. We do not think that the affirmative matter set up by the defendant justifies the affirmative relief that was granted him by the decree.

In determining the first proposition, it was necessary that the plaintiff establish (a) the necessity for it to have exclusive control and use of that portion of the tunnel on the Lee claim in its mining operations, and that no other reasonable avenue was open or could be made accessible to plaintiff in such operations, and (b) that the use for which plaintiff desires to subject such property of the defendant to plaintiff's exclusive use is a more important public use than that for

which defendant could lawfully use such property. It was necessary for the plaintiff to establish both these propositions before it was entitled to the relief sought. Did plaintiff establish its right to the exclusive use of the tunnel as a roadway?

We find no case where property is in use for a particular purpose by one party, either as owner or otherwise, in which any court has given another an exclusive right under the right of eminent domain to the same property. Defendant has cited a number of cases where land has been acquired and used by one party under the right of eminent domain and courts have granted to others a right in the same property where the new right did not materially conflict with the enjoyment of the older right. (*Butte, Anaconda & Pacific Ry. Co.* v. *Montana Union Ry. Co.,* 16 Mont. 504, 41 Pac. 232, 50 Am. St. Rep. 508, 31 L. R. A. 298; *Amador Queen Min. Co.* v. *Dewitt,* 73 Cal. 482, 15 Pac. 74; *Marsh Min. Co.* v. *Inland Empire Mining & Milling Co.,* 30 Idaho, 1, 165 Pac. 1128; *Monetaire Mining Co.* v. *Columbus Rexall Consolidated Mines Co.,* 53 Utah, 413, 174 Pac. 172.) In the Idaho case, supra, it was said: "The aid of eminent domain is extended to the industry [mining], not to the individual." We do not think that the plaintiff below has shown any sufficient grounds to justify the court in granting it the exclusive right to use the 51 feet of the tunnel running through the Lee claim. Furthermore, it appears from the testimony of plaintiff's own witness, Correy, who qualified as a mining engineer and an expert in mining matters, that plaintiff has other sources of access to the ore vein in the Tuxedo claim.

Two witnesses who qualified as mining engineers and experts in mining matters testified, one for each party. Engineer Correy, called as a witness for the plaintiff, testified that the Tuxedo claim was surrounded by claims of other parties and had no outlet for a roadway, for bins or ore chutes, except over the land of some of the adjoining claims; that the Tuxedo claim carried mineral of commercial value if a way could be obtained without too much expense; that a road in the shape

of a loop runs past the portal of the tunnel on the Lee claim and continues around the slope passing the location for ore bins where the loading could be done, and returns back to the neck of the loop and there connects with the incoming road, and from there connects with the county road about two and one-half miles from the location of the claims involved. Witness admitted on cross-examination that a new tunnel at a point indicated on a map in evidence could be run that would connect the Tuxedo claim with the roadway already located, but at a different point; that such tunnel would have to be run approximately 300 feet but might intercept the old tunnel at about 175 feet. The witness estimated the cost of running the new tunnel at $10 per foot or possibly in excess of that. Defendant at this point offered to give the plaintiff a right to use such portions of the Lee claim as was necessary for a portal for a new tunnel, and such grounds for a dump, ore bins and loading chutes as would be necessary for plaintiff to carry on its operations, if the use of the old tunnel in common between the parties was not acceptable to the plaintiff.

Engineer Gillis, the other expert, was called by the defendant and testified that he had examined the tunnel in question as the representative of the Northern Pacific Railway Company; that the tunnel runs through the Lee claim about 51 feet, then on through the Tuxedo claim for about 200 feet, and crosses the line between section 27 and the Tuxedo claim at approximately 250 feet; that at no point in either the Lee or Tuxedo claim traversed by the tunnel is there any mineral deposit carrying commercial ore; that he had been with the Northern Pacific Railway Company for some 20-odd years and engaged in looking after the mineral properties of that company, and knew of no use the tunnel had ever been put to except in connection with the operations on section 27; that the defendant had marketed ore from section 27 in recent months of the value of over $12,000; and that he, the witness, had placed a plug in the roof of the tunnel to show the line where the tunnel passed from the Tuxedo ground into section 27, and

painted across the side and top of the tunnel a line on the plane of the section line between the Tuxedo ground and section 27. The witness stated on cross-examination that the closest point to the Tuxedo line that ore was taken out of the workings in section 27 was a crosscut that approached to within about four feet of the line between the Tuxedo claim and section 27, and that he assumed that the lead that was worked in section 27 continued into the Tuxedo ground.

There is no material conflict in the evidence as to the fact that plaintiff has a way to its lead on the Tuxedo lode for a new tunnel at the point indicated on the map in evidence "at the place marked X in red pencil." Whether the cost of driving such tunnel would exceed the value obtained from the ores mined is, of course, uncertain and cannot be determined by any evidence in the record. (See *State* v. *Whitcomb*, 94 Mont. 415, 22 Pac. (2d) 823.) It is sufficient here to state, however, that the evidence shows that there is another way open to the plaintiff to reach its ores in the Tuxedo claim independent of the 51 feet of the old tunnel located on the Lee claim. Furthermore, defendant has offered to grant plaintiff its choice between the use in common of the old tunnel or an easement free of cost for all essentials for running a new tunnel and such facilities for dumping, roadway, ore bins, and chutes as may be found necessary. In view of the situation as thus presented, we find no authority in the statutes nor in the decisions that would justify the court in rendering judgment in favor of the plaintiff to the extent of giving plaintiff the exclusive right to the use of that part of the tunnel on defendant's claim. Plaintiff has not shown that the use for which it asks that defendant's portion of the tunnel be condemned is a more necessary public use than that for which it is employed by the defendant, and in this particular plaintiff has failed to meet the requirements of subdivision 3 of section 9936 of the Revised Codes.

True, if the defendant in mining ores in section 27 is deprived of the use of that part of the tunnel that passes through

the Tuxedo claim, the 51 feet of the tunnel on defendant's own ground—the Lee claim—might appear to be without value to the defendant in his mining operations. In other words, to give the 51 feet of the tunnel through the Lee claim any value for mining purposes, defendant must have the right to use the 200 feet of the tunnel running through the Tuxedo claim, but this raises a question that the record does not furnish sufficient evidence upon which a decision may be made. It might be shown that defendant could utilize the 51 feet of the tunnel to reach the ore body in section 27 without passing through the Tuxedo claim, and, obviously, further evidence is necessary before it may be said that defendant's part of the tunnel is valueless to him for mining purposes without access to the 200 feet of the tunnel through the Tuxedo claim. For the reasons stated, we do not think relator clearly entitled to all of the relief demanded.

Second, the court had no power to award the defendant any right in this action to the use of that part of the tunnel that runs through the Tuxedo claim for some 200 feet. It is our opinion that no rights accrued to any of the parties to this controversy by the original location made by Horn and others who drove the tunnel in controversy here. A relocated mining claim carries over no right acquired under a former location. (Morrison's Mining Rights, 16th ed., pp. 146, 147; *Burke* v. *Southern Pacific Ry. Co.,* 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527.) This being true, all rights to the tunnel were lost when the parties who furnished the labor and built or ran such tunnel lost their rights by the abandonment of their original claim and staked out new locations and filed thereon, the ownership of which was later acquired by the plaintiff. Such part of the tunnel, of course, as is located on the respective ground that now belongs to the plaintiff, the defendant, and the Northern Pacific Railway Company belongs to the respective owners of that ground; that part of the tunnel on the Tuxedo claim is the property of the plaintiff, and the court had no power to deprive the plaintiff of it and hand it

over to the defendant under the pleadings and evidence in this action. If the defendant seeks to obtain the title or an easement to such part of the tunnel, it would be necessary for him to have filed a cross-complaint or begin an independent action and follow it up by such proof as would meet all the requirements of the statute for obtaining title or an easement under the right of eminent domain. Anything less would deprive the plaintiff of its property without due process of the law. It ▇ is obvious that until the defendant is granted a legal right to use that part of the tunnel that runs through the Tuxedo claim, defendant is a trespasser upon plaintiff's premises. Citations are hardly necessary to support such a conclusion, but authorities are given at pages 316 and 317 in Morrison's Mining Rights, supra. It also becomes obvious from what has been said that defendant's contention that the tunnel is appurtenant to the Northern Pacific land, by reason of its having been run to tap and mine the ores in that land, is untenable.

We assume that this decision will not terminate the controversy, and in the event other proceedings may bring the matter here, we will state that neither party to this action could, by any proceeding under the provisions of the statutes relating to eminent domain, acquire, in our opinion, the exclusive right to the use of that part of the tunnel located on the ground of the other, for the very simple reason that both parties contend they are using, or intend to use, the tunnel for the same purpose; consequently, neither can say his purpose is more useful than the other. This conclusion, of course, is grounded upon the assumption that each can establish such contention by appropriate evidence.

Section 9934, Revised Codes, enumerates the public uses for ▇▇ which private property may be taken under the right of eminent domain; mining is one of them. Section 9936 describes the kind of property that may be so taken. Section 9943 enumerates the powers of the court or judge in the premises, and must be strictly followed. It will be noted that the court has the power to determine all matters except to fix the

damages to be paid the owner of the land condemned, and in such matter of damages the court must appoint commissioners to fix the same. In the judgment under review, defendant was given a property right in plaintiff's land without the necessary pleadings upon which such grant may be made and without the appointment of commissioners to fix the damages as just compensation to which the plaintiff is entitled for its property.

The district court is therefore directed under the supervisory power of this court appealed to by the relator, to annul the judgment rendered in action No. 35769, entitled *Butte-Los Angeles Mining Company, a Corporation, Plaintiff,* v. *John J. McNamara, Defendant,* and to allow the defendant McNamara opportunity to amend his answer or file a cross-complaint, and the plaintiff to file such reply to the amended answer, if one be filed, as it deems proper, and when so amended to hear such additional testimony as the parties may desire to offer and such as may be proper under the amended pleadings, and whether the pleadings be amended or not, if the parties cannot agree upon the compensation, to revise the findings and proceed in accordance with the views herein expressed, appoint commissioners to assess the damages, and thereafter proceed as directed by statute.

Associate Justices Matthews and Anderson, concur.

Mr. Chief Justice Sands, being absent, and Mr. Justice Stewart, disqualified, take no part in the foregoing decision.