JUSTICE McKINNON,
dissenting.
¶134 The Court errs in applying the “more necessary” requirement of § 70-30-11 1(1)(c), MCA, in a condemnation proceeding where the public use for public or private ownership is the same. The confusion in the trial proceedings and this Court appears to have originated with our incorrect analysis in Mountain Water I and our departure from well-established precedent holding that subsection (c) does not apply when the proposed second appropriation does not contemplate a change in public use. See Montana Power Co. v. Burlington Northern, 272 Mont. 224, 900 P.2d 888 (1995); Mont. Talc Co., v. Cyprus Mines Corp., 229 Mont. 491, 748 P.2d 444 (1987); Cocanougher v. Zeigler, 112 Mont. 76, 112 P.2d 1058 (1941); State ex rel. Butte-Los Angeles Mining Co., Relator v. District Court, 103 Mont. 30, 60 P.2d 380 (1936); and Butte, Anaconda & Pac. Ry. v. Mont. Union Ry., 16 Mont. 504, 41 P. 232 (1895). Pursuant to subsection (c), “the real question is: Will the taking of this private property, already dedicated to one public use, destroy the prior public use?” Cocanougher, 112 Mont. at 81, 112 P.2d at 1060. When the existing public use and the proposed public use are the same, as here, subsection (c)—whether public ownership of Mountain Water is “more necessary” than private ownership—is an incorrect legal standard upon which to determine whether condemnation is warranted.
¶135 Consistent with many jurisdictions across the country, Montana’s “more necessary” requirement contained in subsection (c) addresses public use conflicts that arise when a property is already dedicated to a public use, there is a proposed second appropriation for an incompatible public use, and statutes have conferred the power of eminent domain upon the entities at issue—regardless of whether the entities may be characterized as public or private. The “more necessary” requirement is an exception to the prior public use doctrine, which is well recognized in the law of eminent domain:
Property of a private corporation devoted to a public use, although not clothed with a specific exemption from subsequent condemnation, cannot be taken to be used in the same manner for the same purpose by a different corporation, even by express enactment of the legislature.
1 J. Sackman, Nichols’ Law of Eminent Domain, § 2.2(9) n.3 (rev. 3d. ed. 1981). The doctrine provides that when property is already subject to a public use and the proposed use would either destroy the existing use or interfere with it to such a degree that it is equivalent to *242 destruction, a proposed condemnation of such property will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication. See Nichols’ Law of Eminent Domain, § 2.2. See also 29A C.J.S. Eminent Domain § 58 (1992) (“As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in each case insufficient.”). The statutory exception providing for the “more necessary” test allows a court flexibility in applying the rule’s prohibition against condemnation when the proposed use will serve a more necessary or “higher” use than the public use to which the property is already appropriated. 26 Am. Jur. 2d Eminent Domain § 106 (2014).
¶136 Consistent with these principles, § 70-30-11 1(1)(c), MCA, provides that before property can be taken, the condemnor shall show the property is “already being used for a public use, that the public use for which the property is proposed to be used is a more necessary public use.” Early in our history, this Court recognized that “our legislature has imposed upon the court the additional responsibility of judicially determining whether the use to which the [proposed condemnor] did or would put the particular lands is a more necessary one to the public than that to which they have already been appropriated ....” Butte, Anaconda & Pac., 16 Mont. at 538, 41 P. at 243. Equally well-established by this Court is the rule that “[i]n interpreting the ‘more necessary’ requirement of § 70-30-11 1[(1)(c)], MCA, we have held that this determination affects condemnation proceedings only when we have two public uses that are not compatible uses.” Montana Power, 272 Mont. at 233, 900 P.2d at 894 (emphasis added). See also Cocanougher, 112 Mont. at 84, 112 P.2d at 1061 (“This distinction must be clearly kept in mind, and, if it is, no confusion can arise.”); Butte, Anaconda & Pac., 16 Mont. at 538, 41 P. at 243 (“If the question were limited merely to this single inquiry... doubtless, under rules of construction, we should hold that the respondent could not invade the right of way of the appellants.”); Montana Talc, 229 Mont. at 504, 748 P.2d at 452 (“It is necessary, therefore, that this case be remanded for the purpose of a determination by the District Court of a consideration of all factors involving the public use of the subject property by Cyprus, and as proposed by Montana Talc.”). In Montana Power, we specifically held that when the uses are compatible or the same, the court errs in conducting an analysis pursuant to subsection *243 (c). Montana Power, 272 Mont at 234, 900 P.2d at 895 (“The District Court made a ‘more necessary’ determination under the erroneous assumption that such determination was required under the statute. The court was not required to make that determination because MPC’s use would not destroy nor materially injure BN’s prior use.”).
¶137 Furthermore, our precedent establishes the rationale and factors to consider in applying the “more necessary” test which likewise demonstrate the inapplicability of subsection (c) to a use which is the same or identical. In Butte, Anaconda & Pacific Railway, we explained:
Now, however, having advanced to this point of the case, we are met with this argument by the appellants’ counsel, namely, that this right of way was already appropriated, and that there was no delegation of power to any corporation under the eminent domain laws of the state to take property already appropriated to a public use, unless, as provided by the last clause of the third subdivision of section 601, Code of Civil Procedure 1887, “the public use to which it is to be applied is a more necessary public use.” We have already concluded that this land was necessary to respondent’s use, and the question therefore is, is respondent precluded from condemning these necessary lands because they have already been condemned for public use by the appellants? If the question were limited merely to this single inquiry (unless some other statute authorized a taking), doubtless, under rules of construction, we should hold that the respondent could not invade the right of way of the appellants. But our legislature has imposed upon the court the additional responsibility of judicially determining whether the use to which the appellants did or would put the particular lands is a more necessary one to the public than that to which they have already been appropriated by the Montana Union Railway. We therefore find the whole proposition resolves itself under the facts to this: A part of the right of way of the Montana Union Railway Company has never been used by it for railroad purposes for the several years during which the road has been constructed and in operation, and is not reasonably requisite for future uses. The Butte, Anaconda & Pacific Railway Company, in the location of its only really practicable route, desires to take parts of such unused portions of the Montana Union right of way; such portions being necessary for their actual use, and unnecessary for the actual use of the appellants.
Butte, Anaconda & Pac., 16 Mont. at 537-38, 41 P. at 243-44.
¶138 In Montana Power, the power company’s need for an easement across the railroad’s property in order to provide power could be *244 coordinated with the railroad’s public use of providing transportation “to achieve the greatest public benefit and the least private injury.” Montana Power, 272 Mont. at 239, 900 P.2d at 898. However, if one public use defeated the other’s public use, then a determination would have to be made as to which use achieved the greatest public benefit and the least private injury. We explained that the company’s attempt to condemn an easement through private property belonging to the railway was not incompatible with the railway’s different public use of the property, holding that a more necessary use can also be a compatible use. Montana Power, 272 Mont. at 239, 900 P.2d at 898.
¶139 The Court mistakenly confuses a change in the owner of the property facilitating the public use with a change in the property’s public use when it states “because the City’s acquisition of the water system would ‘inhibit’ Mountain Water’s use of its property by wholly depriving it of the use of the water system, the uses are not compatible, thus requiring the ‘more necessary’ analysis to be conducted.” Opinion, ¶ 84. While a taking of Mountain Water’s property will destroy its ownership, the public use and consumption of water will continue and remain the same regardless of whether the property is owned by Mountain Water or the City. The discussion is necessarily reduced therefore to the virtues of private and public ownership. However, the statute is specific as to a requirement that there be a change in the public’s use—“that the public use for which the property is proposed to be used is a more necessary public use ....” Section 70-30-1 ll(l)(c), MCA. The inquiry under subsection (c) is not whether a taking of Mountain Water’s property prevents Mountain Water from realizing the benefits of its ownership, but whether the second appropriation is for a public use which is more necessary. Aside from Mountain Water I, we have never addressed whether condemnation of a privately owned utility dedicated to a public use may be condemned by a municipality for the same proposed public use. Although we have stated that § 70-30-11 l(l)(c), MCA, does not require that, for lands to be appropriated as a more necessary use that they be for a different public use in all cases, “different,” “compatible,” and “joint” public use maybe distinguished from “same” based upon distinctions in our precedent and the facts in any given case. Indeed, we must endeavor to draw out the distinction, as we should here, in order to remain consistent with long established precedent in Montana that “neither party... could, by any proceeding under the provisions of the statutes relating to eminent domain, acquire, in our opinion, the exclusive right to the use of that part of the [property] located on the ground of the other, for the very simple reason that both parties contend they are using, or intend to *245 use, the [property] for the same purpose; consequently, neither can say his purpose is more useful than the other.” Butte-Los Angeles Mining Co., 103 Mont. at 41, 60 P.2d at 385 (emphasis added). In Cocanougher, this Court, relying on the reasoning of Marsh Mining Company v. Inland Empire Mining & Milling Company, 30 Idaho 1, 8, 165 P. 1128, 1129 (1916), stated:
Property devoted to, or held for, a public use is subject to the power of eminent domain if the right to so take it is given by constitutional provision or legislative enactment, in express terms or by clear implication, but it cannot be taken to be used in the same manner and for the same purpose to which it is already being applied, or for which it is, in good faith, being held, if by so doing that purpose will be defeated. The purposes having been specified in sections 3223 and 3224, supra, for which property dedicated to mining may be appropriated, it follows that, unless it is being applied by its owner to, or in good faith held for, the same or a more necessary public use, which will be defeated or seriously interfered with thereby, it may be taken in aid of that industry under the power of eminent domain.
Cocanougher, 112 Mont. at 84, 112 P.2d at 1061 (emphasis in original). The rule is thus stated that “it is a statutory requirement that the second appropriation shall be for a ‘more necessary public use.’ But such requirement refers to a proceeding to dispossess the owner of his property and deprive him of its use altogether, and does not preclude condemnation for a joint use which will not interfere with the use thereof by the owner.” Cocanougher, 112 Mont. at 84, 112 P.2d at 1061. Therefore, the “more necessary” requirement is always subject to the limitation that “property devoted to public use cannot be taken to be used for the same purpose in the same manner, as this would amount simply to the taking of property from one and giving it to another without any benefit or advantage whatever to the public.” Cocanougher, 112 Mont. at 92, 112 P.2d at 1065. See also NL Indus. v. Eisenman Chem. Co., 98 Nev. 253, 645 P.2d 976 (1982); Lake Shore Ry Co. v. Chicago Ry. Co., 97 Ill. 506 (1881); State ex rel. Harbor Broom Co. v. Superior Court, Pac. Cty., 65 Wash. 129, 117 P. 755 (1911); State ex rel. Missouri Cities Water Co. v. Hodge, 878 S.W.2d 819 (Mo. 1994); Beaumont v. Beaumont Irrigation Dist., 63 Cal. 2d 291, 405 P.2d 377 (1965). Indeed, if the property is already subject to a public use, a condemnation for the same public use is inconsistent with a determination or finding that there is a necessity for the taking.
¶140 In contrast to the different but joint or compatible public uses at issue in Montana Power, Montana Talc, Cocanougher, Butte-Los *246 Angeles Mining, and Butte, Anaconda & Pacific, the public use which the City proposes for the condemned property is identical and indistinguishable from the public use to which Mountain Water currently has dedicated the property and proposes it will continue to use the property. Property already appropriated to a public use may not be afterwards taken by a municipality for the same use unless the intention of the Legislature that it be taken has been manifested in express terms or by necessary implication. The enactment of laws which enable a municipality to exercise the powers of eminent domain is within the legislative power of the State. The fundamental power to exercise the right to acquire property by eminent domain lies dormant with the State until the Legislature, through specific enactment, designates the manner and means by which the power may be exercised. In the absence of such authority, municipalities may not exercise such power. “There is ... a rule of construction, sustained by the great weight of well-considered authority, to the effect that this power to take the property of private citizens or other corporations for public use must be exercised and can be exercised only so far as the authority extends, either in terms expressed by the law itself, or by implication clear and satisfactory.” Butte, Anaconda & Pac., 16 Mont. at 537, 41 P. at 243 (citing Matter of City of Buffalo, 68 N.Y. 167, 170 (1877)).
¶141 Legislatures have struggled with regulatory reforms and reexamination of public ownership, requiring policy makers to decide whether to continue with deregulation of utilities or return to public ownership with government controlled regulatory safeguards. Municipalities have and continue to form public utility districts and are attempting to negotiate purchases of privately owned utilities. It is not the role of the judiciary and courts to interfere with this policy debate. Montana’s statutes focus on the character of the public use and whether it is necessary. Absent a statute that addresses the nature and characteristics of the condemnor—that is, whether they are a municipality, government agency, or private owned—we are not free to inject our personal predispositions toward or against public ownership into any condemnation proceeding. Judicial decisions that appear to rest on a “more necessary” rationale when the taking is by a municipality of a privately owned utility do not offer a reasoned analysis, but rather are undermined with the predisposition “municipal, ergo more necessary.” In addition to this Court’s opinion and the District Court’s order such a strained “legal” analysis has been applied in only a few situations:
While we cast no aspersions upon these corporations ... the fact *247 remains that they are manifestly low-grade, volunteer, public service type corporations, inferior in all respects, to municipalities which exist for the purpose of general government. Cities enjoy perpetual succession.... They enjoy a higher degree of permanency and a greater degree of stability.
Duck River Electric Membership Corp. v. City of Manchester, 529 S.W.2d 202, 206 (Tenn. 1975). This is exactly the rationale followed by the District Court and is premised upon an incorrect application of subsection (c).
¶142 The Montana Legislature attempted to address this issue concerning the characteristics of the condemnor and the condemnee when it specifically delegated to cities and towns, through § 7-5-4106, MCA, a conclusive presumption of necessity when the municipality exercises its power to condemn private property for any public use listed in § 70-30-102, MCA. Section 70-30-102(6), MCA, establishes that “water and water supply systems as provided in Title 7, chapter 13, part 44” are public uses for which the right of eminent domain may be exercised. Section 7-13-4405, MCA, further authorizes a city or town to use their powers of eminent domain to procure “water rights and the necessary real and personal property to make an adequate water supply available.” Section 7-13-4403, MCA, is a statute which specifically addresses under what circumstances a city or town may acquire a privately owned water supply system such as Mountain Water. However, this Court in Mountain Water I, in my view, incorrectly determined that § 7-5-4106, MCA, did not apply to condemnation proceedings of private water supply because its provisions were not contained within part 44 of Title 7 of the MCA. In my opinion, it was for the Legislature to decide whether a municipality should be able to condemn a private utility when the public use would remain unchanged and not for this Court to invalidate the Legislature’s efforts, absent a constitutional challenge. It is clear that the Legislature was aware that the general powers of eminent domain pursuant to § 70-30-111, MCA, were not sufficiently broad to permit condemnation of property of a pre-existing private utility already devoted to the same public use as contemplated by the municipality seeking to condemn it.
¶143 The ultimate question presented by these proceedings is whether condemnation of a privately owned utility dedicated to public use may be condemned by a municipality for the same proposed public use. As previously explained, subsection (c) is inapplicable as an exception to the general rule that property already legally appropriated to a public use is not to be afterwards taken by a municipality for the *248 same use unless the intention of the Legislature that it be so taken is manifested in express terms or by clear implication. In my opinion, the Montana Legislature manifested such an intent through its enactment of § 7-5-4106, MCA, establishing a conclusive presumption of necessity for the benefit of a municipality where the municipality seeks to condemn property. The Legislature obviously realized, consistent with many other states, that necessity for the taking of property already committed to a public use was near impossible for a municipality unless the characteristics of the condemnor—a representative body of the municipality’s residents—were considered and factored into the necessity analysis. Such presumptions are premised on the notion that a municipality will not seek to take property already committed to a public purpose unless it believes it can serve its residents better by taking ownership of the property committed to a public use. Absent this statutory provision and given our precedent and the limitations of § 70-30-11 1(1)(c), MCA, the only conclusion that can be reached is that the City has failed to meet its burden of proving necessity. It is undisputed that the City would dedicate the property to the same, identical public use as Mountain Water’s current use of the property—the supply of potable water to residents of Missoula and the surrounding area.
¶144 Based upon the foregoing analysis, it is my opinion that the District Court was incorrect in its legal interpretation of § 70-30-111(1)(c), MCA, and its application to these proceedings. The parties do not dispute that the public use for which the property was dedicated and would continue to be dedicated, either under public or private ownership, was the same and indistinguishable. Pursuant to the foregoing authority, the order of condemnation amounted to a taking of property from one and giving it to another without any change in public purpose. Absent a presumption of necessity based upon the character of the condemnor as a municipality, the City could not meet its burden of proof by a preponderance of the evidence that the taking of private property was necessary for the dedicated public purpose. I would reverse the order of condemnation and dismiss these proceedings on this basis alone.
¶145 As a final note, I do not agree that it is appropriate for this Court to acquiesce in the incorrect application of a statute, especially when a fundamental right is at stake. At the heart of these proceedings was the correct interpretation, as a matter of law, of subsection (c). Our faulty analysis in Mountain Water I provides no excuse for this Court to continue in the incorrect application of a statute. Opinion, ¶ 83. Our review of whether the statute was correctly applied is plenary, and not *249 dependent upon whether the “theory” was raised by the parties. Opinion, ¶ 83. We have an obligation to litigants, the trial courts, and the citizens of Montana to “get it right” and make sure a statute has been correctly applied. When we have been wrong in a previous statutory interpretation, we have a similar obligation to own our mistake and provide guidance and leadership. The litigants and the District Court were misled by our decision in Mountain Water I and our decision today reflects a strained and distorted analysis premised upon the virtues of private and public ownership when the public use will not change. We should not perpetuate and magnify the problem we created in Mountain Water I. The trial proceedings here were complicated and undermined by policy issues surrounding private and public ownership, which have no place in a judicial proceeding. It is for this Court to correctly interpret and apply the law, even if it means in doing so that we must admit we were incorrect previously.
¶146 I also join Justice Rice as to his assessment and evaluation of the discovery abuses. I believe the cumulative effects of these abuses denied Mountain Water a fair trial.